**POLY–AMERICA, L.P.,**
**Plaintiff–Appellee,**

v.

**GSE LINING TECHNOLOGY, INC.,**
**Defendant–Appellant.**

No. 04–1022.

United States Court of Appeals, Federal Circuit.

DECIDED: Sept. 14, 2004.

Jerry R. Selinger, Jenkens & Gilchrist, of Dallas, TX, argued for plaintiff-appellee. With him on the brief were John C. Eichman and Timothy G. Ackermann.

Donald R. Dunner, Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P., of Washington, DC, argued for defendant-appellant. With him on the brief were Thomas H. Jenkins and Rachel H. Townsend. Of counsel on the brief were T. Michael Wall, Gardere Wynne Sewell LLP, of Houston, TX; and David M. Frischkorn, S. Richard Carden and Alison J. Baldwin, McDonell Boehnen Hulbert & Berghoff, of Chicago, IL.

Before MICHEL, LOURIE, and RADER, Circuit Judges.

LOURIE, Circuit Judge.

GSE Lining Technology, Inc. ("GSE") appeals from the post-trial decision of the district court denying its motion for judgment as a matter of law ("JMOL") that two of Poly–America, L.P.'s ("Poly–America's") patents relating to landfill liner technology were invalid. *Poly–America, L.P. v. GSE Lining Tech., Inc.*, No. 3:00–CV–1457–D, 2003 WL 21946842 (N.D.Tex. Aug. 13, 2003) (*"Post–Trial Order"*). GSE also appeals from the denial of its motion for a new trial on damages. *Id.* Because we agree with the district court's claim construction with respect to Poly–America's patents and because there is sufficient evidence to support the jury's verdict, we affirm the denial of JMOL of invalidity for both patents. However, because the district court erred in permitting Poly–America to claim the lost profits of a related corporation, Poly–Flex, Inc. ("Poly–Flex"), in its damages calculations, we reverse the district court's denial of GSE's motion for a new trial on damages and remand for the district court to redetermine whether Poly–America has incurred lost profits.

## BACKGROUND

Poly–America, L.P.[1] owns United States Patents 5,763,047, directed to a three-lay-

1. Poly–America, L.P., the named appellee in this case, is the successor-in-interest of Poly–America, Inc., the corporation that originally filed suit. Similarly, GSE is the successor-in-interest of Serrot International, Inc., the initial defendant. The names of the parties were changed during the course of the lawsuit to reflect the parties now participating in this

ered textured landfill liner, and 5,804,112, covering a method for making such a liner. Both patents have an effective filing date of April 3, 1996, and both issued in 1998. The patents disclose a blown-film liner that comprises a smooth inner layer bonded to textured outer layers. The texture in the outer layers is created by a blowing agent that erupts during the extrusion process, producing a surface useful for gripping sloped dirt surfaces. The inner layer protrudes from the outer textured layers, and, when welded to the smooth portion of an adjoining sheet, it forms a strong seal to create an effective barrier for landfill use.

The blown-film process employs a circular die to shape thermoplastic material into a long, hollow tube, and concentric channels in the die produce plastic sheets having multiple layers. The extruded material is then cut into rectangular sheets. Poly–America claims that its innovation went against the traditional understanding about the process used to create blown-film liners. It asserts that before its invention, the prevailing belief in the industry was that balanced thermoplastic flow and uniform velocity within a blown-film die were critical parameters for normal production. In contrast, Poly–America's invention called for blocking certain channels in the die that normally produced the outer layers, so that the liner would have a smooth layer without the textured portions. Poly–America claimed that a skilled artisan would not have intentionally obstructed a channel in a blown-film die for fear of damaging the equipment and incurring significant expense in repair and lost production time.

In July 2000, Poly–America, Inc. sued Serrot International, Inc. ("Serrot"), alleging infringement of the '047 and '112 pat-

ents. Serrot moved for summary judgment of invalidity, arguing that Poly–America's patents were invalid as anticipated. It argued that Gloucester Engineering manufactured for another company, Gundle Lining System, a die ("the Gundle die") that was capable of performing the method claimed in the '112 patent. That machine, Serrot claimed, was sold in 1987 and thus is anticipatory prior art under the 35 U.S.C. § 102(b) on-sale bar. Serrot also asserted that the '047 and '112 patent claims were anticipated or, in the alternative, were rendered obvious by another existing liner product, Friction Seal, made by a cast process, not a blown-film process. The district court rejected Serrot's theories of invalidity, and it denied Serrot's motion for summary judgment. *Poly–America, Inc. v. Serrot Int'l, Inc.*, No. 3:00–CV–1457–D, 2001 WL 1335793 (N.D.Tex. Oct. 18, 2001) (*"Claim Construction Order"*).

Serrot thereafter conceded infringement, and the case proceeded to trial before a jury on Serrot's invalidity defenses, willfulness, and damages. In December 2002, the jury returned a verdict in favor of Poly–America, Inc., concluding that the patents were not invalid and finding that Serrot had willfully infringed the patents. *Poly–America, Inc. v. Serrot Int'l, Inc.*, No. 3:00–CV–1457–D, slip op. at 9–10, 17, 2002 WL 31802629 (N.D.Tex. Dec. 5, 2002) (*"Jury Verdict"*). The jury awarded damages of $7.15 million in lost profits and a reasonable royalty of $5.08 million. *Id.* at 17.

Following the jury verdict, GSE filed a post-trial motion for JMOL, arguing that the Poly–America patents were invalid for anticipation and obviousness. It also moved for JMOL or, alternatively, a new

appeal. *See Poly–America, L.P. v. GSE Lining Tech., Inc.*, No. 3:00–CV–1457–D, 2003 WL 21946842, slip op. at 1 n.1 (N.D.Tex. Aug. 13, 2003).

trial on damages, asserting that the jury's award was against the great weight of the evidence. The district court denied GSE's motions for JMOL of invalidity, but it did conclude that the jury's reasonable royalty award was unreasonable to the extent that the amount was greater than the maximum reasonable royalty damages award that was supported by the trial evidence. The court conditioned the denial of GSE's motion for a new trial on Poly–America's acceptance of a remittitur of $266,502.00 of the reasonable royalty award. *Post–Trial Order*, slip op. at 26.

Poly–America accepted the remittitur, and GSE now appeals from the denials of its motion for JMOL of invalidity and its motion for a new trial on damages. GSE does not appeal from the willfulness decision, nor is infringement at issue in this appeal. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

 We review a district court's denial of a motion for JMOL of patent invalidity de novo, reapplying the standard used by the district court. *Sextant Avionique, S.A. v. Analog Devices, Inc.*, 172 F.3d 817, 824 (Fed.Cir.1999). JMOL is appropriate when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." Fed.R.Civ.P. 50(a)(1). When reviewing a court's denial of JMOL, we must "determine whether viewing the evidence in the light most favorable to the non-moving party, and giving the non-movant the benefit of all reasonable inferences, there is sufficient evidence of record to support a jury verdict in favor of the non-movant." *Ericsson, Inc. v. Harris Corp.*, 352 F.3d 1369, 1373 (Fed.Cir.2003) (citation and internal quotation marks omitted).

 The denial of a motion for a new trial is an issue not unique to patent law; thus, we apply the law of the regional circuit in which the district court sits—in this case, the Fifth Circuit. *See WMS Gaming Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1361 (Fed.Cir.1999). In the Fifth Circuit, "[t]he decision to grant or deny a motion for a new trial will be disturbed only for abuse of discretion or misapprehension of the law." *Woodfield v. Bowman*, 193 F.3d 354, 358 (5th Cir.1999) (citing *Mitchell v. Lone Star Ammunition, Inc.*, 913 F.2d 242, 252 (5th Cir.1990)). The Fifth Circuit affirms the denial of a motion for new trial "unless, on appeal, the party that was the movant in district court makes a clear showing of an absolute absence of evidence to support the jury's verdict, thus indicating that the trial court had abused its discretion in refusing to find the jury's verdict contrary to the great weight of the evidence." *Whitehead v. Food Max of Miss., Inc.*, 163 F.3d 265, 269 (5th Cir.1998).

### A. The '112 Patent

On appeal, GSE argues as it did in the district court that Poly–America's '112 method patent was anticipated by the sale of the Gundle die. GSE maintains that, because the die was capable of performing the process that Poly–America later claimed, the sale of the die was a § 102(b) on-sale bar. It claims that the district court relied on and misinterpreted *In re Kollar*, 286 F.3d 1326 (Fed.Cir.2002), as holding that a sale of a method does not constitute a sale within the meaning of § 102(b) until the method has been put into commercial practice. GSE argues that our decision in *Minton v. National Ass'n of Securities Dealers, Inc.*, 336 F.3d 1373 (Fed.Cir.2003), holds otherwise, so that even though the Gundle die may not have been used to carry out the claimed

process before the critical date of Poly–America's patent, its sale still represents a statutory bar to the patentability of the process. Additionally, it contends that the jury could not have reasonably concluded that the "choker slides" in the Gundle die were not the same as the "plugs" in the claims of the '112 patent.

Poly–America responds that the district court was correct to deny GSE's motion for JMOL because the process later claimed in the '112 patent was not ready for patenting when the Gundle die was sold in 1987. That defect, it argues, prevents the sale from becoming a bar to patentability. Poly–America asserts that our decision in Kollar is inapposite and that GSE has generally failed to show that the jury charge regarding the sale of the Gundle die was either erroneous or prejudicial. Also, Poly–America argues that the jury could have found a material difference between the "choker slides" and the claimed "plugs" and that such a finding was supported by substantial credible evidence.

■ We agree with Poly–America that the district court properly denied GSE's motion for JMOL. Our analysis begins with the relevant statute, 35 U.S.C. § 102(b) (2000), which provides in relevant part that "[a] person shall be entitled to a patent unless ... the invention was ... on sale in this country, more than one year prior to the date of the application for patent in the United States...." "Whether an invention is 'on sale' within the meaning of § 102(b) is a question of law based on underlying factual findings." Kollar, 286 F.3d at 1329. Because a patent is presumed to be valid, 35 U.S.C. § 282 (2000), and that presumption can be overcome only by clear and convincing evidence of facts to the contrary, the facts supporting the claim that a patent is invalid in view of an on-sale bar must be proved

by clear and convincing evidence. Minton, 336 F.3d at 1376.

In Kollar, we considered whether a license agreement between an applicant's assignee and another corporation was a proper basis for a § 102(b) on-sale bar. In that case, Kollar's assignee and the corporation agreed to a license of a low-cost process for preparing various dialkyl peroxides. We stated that "the issue concerning the on-sale bar is not whether the process is physically represented or enabled by a written description, but whether the process has been commercialized." 286 F.3d at 1333. Because the process needed development work in order to be commercially useful and to enable the product of the process to be sold, we held that neither the transfer of know-how regarding a claimed process nor that of a written description of a process met that standard, and thus neither qualifies as a "sale" within the meaning of § 102(b). Id.

On the other hand, we decided in Minton that a lease of a computer program, one that implemented a claimed method and was guaranteed to operate properly, constituted a commercial offer for sale of the method. 336 F.3d at 1378. Whereas the transaction in Kollar involved mere know-how in need of development, the patentee in Minton transferred a fully operational computer program capable of implementing the claimed method. Id.

■ In the present case, the district court found that the Gundle die "was not used to produce textured blown-film liner with a smooth edge until April 2002," Post–Trial Order, 2003 WL 21946842, *4, well after the critical date of Poly–America's '112 patent. Moreover, there was evidence that it was not even known that the Gundle die could perform Poly–America's process and that the use of blocked channels in the Gundle die clearly went against conventional wisdom. The Gundle

die possessed choker slides, in contrast to the "plugs" of the '112 patent claims. GSE's argument that the Gundle die was capable of performing the claimed method is largely premised on the hindsight that its choker slides were able to achieve an objective they were not originally designed to do.

Neither *Kollar* nor *Minton* is wholly on point here, so we need not parse out which case's facts are closer to this one. Those cases involved licenses and leases of the claimed methods by the inventors, whereas this case involves a purported sale by a third party of a device asserted after the critical date to be usable in a claimed method. This case thus does not involve the policy prohibition against an inventor commercializing his invention while deferring the filing of a patent application. It does not involve a transaction with respect to the claimed method; it involves only a device different from that described in the patent for carrying out the claimed method. Thus, we conclude that the sale of the Gundle die was not an anticipation of the claimed method.

In addition, there is substantial evidence in the trial record that the Gundle die's "choker slides" functioned as devices for throttling purposes and not as "plugs" to block the flow of material to produce a textured liner with a smooth edge, as required by the claims of the '112 patent. Because the jury could have reasonably concluded that GSE had not carried its burden of proving by clear and convincing evidence that Poly–America's '112 patent was invalid under the on-sale bar, we agree with the district court that substantial evidence supports the jury's verdict and that Poly–America's '112 patent has not been shown to be invalid. Accordingly, we affirm the district court's denial of GSE's motion for JMOL of invalidity.

## B. *The '047 Patent*

GSE argues that Poly–America's '047 patent is invalid as anticipated or, alternatively, obvious in view of a similar liner called Friction Seal that was manufactured via a cast process by the National Seal Company as early as 1991. GSE maintains that the district court erred by construing the preamble phrase "blown-film" as a substantive limitation in the claims of the '047 patent. If the preamble is an integral part of the claims, then the claims are not invalid over the Friction Seal liner, which is not a "blown-film" liner. Poly–America asserts that the district court correctly construed the preamble language as a limitation, emphasizing the court's analysis of the intrinsic evidence. It thus urges that the court properly denied GSE's motion for JMOL of invalidity.

Claim construction is a question of law that we review without deference. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1456 (Fed.Cir.1998) (en banc). A court may consider the specification, the prosecution history, and other relevant evidence when construing the scope of the claims. *Pitney Bowes, Inc. v. Hewlett–Packard Co.*, 182 F.3d 1298, 1309 (Fed.Cir. 1999).

"Whether to treat a preamble as a limitation is a determination resolved only on review of the entire[ ] ... patent to gain an understanding of what the inventors actually invented and intended to encompass by the claim." *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed.Cir.1989). "No litmus test defines when a preamble limits claim scope." *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed.Cir.2002). On the one hand, a preamble is a claim limitation if it recites essential structure or steps, or if it is "necessary to give life, meaning, and vitality" to the claim. *Pitney Bowes*, 182 F.3d

at 1305. On the other hand, a preamble is not limiting "where a patentee defines a structurally complete invention in the claim body and uses the preamble only to state a purpose or intended use for the invention." *Rowe v. Dror*, 112 F.3d 473, 478 (Fed.Cir.1997). "Further, when reciting additional structure or steps underscored as important by the specification, the preamble may operate as a claim limitation." *Catalina Mktg.*, 289 F.3d at 808.

 We agree with Poly–America that the phrase "blown-film" is a limitation of the claims of the '047 patent. The specification is replete with references to the invention as a "blown-film" liner, including the title of the patent itself and the "Summary of the Invention." The phrase is used repeatedly to describe the preferred embodiments, and the entire preamble "blown-film textured liner" is restated in each of the patent's seven claims. Our analysis shows that the inventor considered that the "blown-film" preamble language represented an important characteristic of the claimed invention. We therefore agree with the district court's conclusion that a "[r]eview of the entirety of the '047 patent reveals that the preamble language relating to 'blown-film' does not state a purpose or an intended use of the invention, but rather discloses a fundamental characteristic of the claimed invention that is properly construed as a limitation of the claim itself." *Claim Construction Order*, 2001 WL 1335793, *2. We further agree with the district court that the jury had the opportunity to fully consider GSE's defense of invalidity for anticipation and obviousness and that there was substantial evidence to support its verdict. Consequently, we affirm the court's denial of GSE's motion for JMOL of invalidity for the '047 patent.

## C. *Lost Profits*

GSE argues that the district court improperly permitted Poly–America to claim lost profits on Poly–Flex's lost sales. It alleges that Poly–Flex, even though it is a sister corporation to Poly–America, nonetheless lacks any exclusive rights and is hence not entitled to damages for infringement. Thus, it contends, the district court erred by treating Poly–America and Poly–Flex as a single economic unit and awarding Poly–America damages for lost profits on sales allegedly lost by Poly–Flex due to infringing sales by GSE.

Poly–America responds that it operates together with Poly–Flex as a single economic unit for the purposes of production, marketing, and sales of the patented liner. It claims that the two corporations share a unity of interest that justifies treating them as a single economic unit for lost profits. Furthermore, it argues that Poly–Flex was more than a mere non-exclusive licensee and possessed certain substantive rights, including the "right of enforcement for claims for past damages" and the right to sublicense others, and that Poly–Flex could and did assign those rights to Poly–America. Poly–America cites a provision in its license agreement with Poly–Flex stating that, at least as between the parties, Poly–America is entitled to collect damages accruing to Poly–Flex from any infringement of the '047 and '112 patents. For those reasons, Poly–America asserts, the jury could have reasonably attributed Poly–Flex's sales to Poly–America, and the district court correctly denied GSE's motion for a new trial.

 We disagree with Poly–America and the district court that Poly–Flex's lost profits are properly recoverable as if they were Poly–America's own damages. Section 284 of Title 35 of the United States Code provides that a patentee shall be awarded "damages adequate to compen-

sate for the infringement, but in no event less than a reasonable royalty." In *General Motors Corp. v. Devex Corp.*, 461 U.S. 648, 103 S.Ct. 2058, 76 L.Ed.2d 211 (1983), the Supreme Court stated that Congress intended in § 284 that a "patent owner would in fact receive full compensation for 'any damages' [the patentee] suffered as a result of the infringement." *Id.* at 654, 103 S.Ct. 2058. Whether lost profits are legally compensable in a particular situation is a question of law that we review *de novo*. *Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1544 (Fed.Cir.1995) (en banc).

It is true that the recovery of lost profits by a patentee is not limited to the situation in which the patentee is selling the patented device. However, the patentee needs to have been selling some item, the profits of which have been lost due to infringing sales, in order to claim damages consisting of lost profits. *See id.* at 1548–49. Poly–America apparently has not sold any item on which it claims damages to itself from GSE's infringement. Although it is not clear here whether Poly–America has itself suffered lost profits from the infringement, a matter that may be dealt with on remand, Poly–America argues that Poly–Flex's lost profits on its lost sales are legally compensable to Poly–America, its licensor. We disagree.

Even though Poly–America and Poly–Flex seem to share interests as two entities collaborating in the manufacture and sale of textured landfill liners, that relationship by itself is not sufficient to permit Poly–America to claim Poly–Flex's lost profits from Poly–Flex's lost sales. Poly–America and Poly–Flex have a common parent corporation and are not simply divisions of a single corporation, but are separate corporate entities. Their parent has arranged their corporate identities and functions to suit its own goals and pur-

poses, but it must take the benefits with the burdens. While we do not speculate concerning the benefits that the two companies reap from dividing their operations and separating the owner of the patent from the seller of the patented product, Poly–America and Poly–Flex may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee. While Poly–America may have the right to sue under its patents, both as an owner and as a back-licensee, it can recover only its own lost profits, not Poly–Flex's.

The provision of the license agreement between Poly–America and Poly–Flex providing that Poly–America "desires to have the contractual right to collect all damages accruing to Poly–Flex for certain past infringements of the Patents" does not change this situation. We have held that a licensee generally may not sue for damages unless it has exclusive rights under a patent, including the right to sue. *See Rite–Hite*, 56 F.3d at 1552; *Ortho Pharm. Corp. v. Genetics Inst., Inc.*, 52 F.3d 1026, 1032 (Fed.Cir.1995). Poly–Flex does not have exclusive rights. It is clearly identified in the license agreement as a nonexclusive licensee, and as such, it received only a "bare license" and has no entitlement under the patent statutes to itself collect lost profits damages for any losses it incurred due to infringement. *Rite–Hite*, 56 F.3d at 1552. Although parties to a lawsuit may allocate the disposition of infringement damages between themselves, as they appear to have done here, they cannot create lost profits for a patentee if there are none. Awarding lost profits to Poly–America on the basis of its private arrangement with Poly–Flex would synthetically create lost profits for Poly–

America, when it may not have suffered any, to the detriment of GSE.

We therefore conclude that the district court misapprehended the law of damages and lost profits and improperly denied GSE's motion for a new trial on damages. Accordingly, we reverse that portion of the district court's judgment and remand the case to determine whether there are any lost profits incurred by Poly–America due to GSE's infringement, and, if not, the proper reasonable royalty to which Poly–America may be entitled.

## CONCLUSION

For the reasons stated above, we affirm the district court's denial of JMOL of invalidity for Poly–America's '112 and '047 patents. We reverse the court's denial of GSE's motion for a new trial on damages and remand for further proceedings consistent with this opinion.

## COSTS

Each party shall bear its own costs.

*AFFIRMED–IN–PART, REVERSED–IN–PART, AND REMANDED.*