**Lawrence I. WECHSLER**

v.

**MACKE INTERNATIONAL TRADE, INC.,**

**and**

**Anthony O'Rourke**

**No. CV–00–00296CAS.**

United States District Court, C.D. California.

Jan. 6, 2005.

---

Edward G. Poplawski, Sidley Austin Brown & Wood, Guy R. Bayley, Guy R. Bayley Law Offices, Los Angeles, CA, Irfan A. Lateef, Knobbe Martens Olson & Bear, Paul N. Conover, Knobbe Martens Olson and Bear, Irvine, CA, Robert E. Wechsler, Wechsler & Wechler, Great Neck, NY, Thomas F. Smegal, Jr., Knobbe Martens Olson & Bear, Irvine, CA, for Plaintiff.

David Heskel Ben–Meir, Hogan & Hartson, Los Angeles, CA, Richard S. Luskin Law Offices, Malibu, CA, Richard E. Lyon, Jr., Holland & Knight, Los Angeles, CA, for Defendants.

SNYDER, District Judge.

**PROCEEDINGS: DEFENDANTS' MOTION FOR JMOL PRECLUDING LOST PROFITS DAMAGES** (filed November 12, 2004)

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff Lawrence I. Wechsler is the inventor of a portable device for feeding

animals, for which he owns U.S. Patent No. 5,636,592 ("the '592 patent"), issued on June 10, 1997. In this action, plaintiff alleges that defendants Macke International Trade, Inc. ("Macke") and Anthony O'Rourke, Macke's President and Secretary, have infringed the '592 patent by "importing, using, offering for sale, and selling in the United States, two different products, the 'Handi–Drink' and the 'Handi–Drink 4' products as well as inducing infringement of the '592 patent." Plaintiff's Statement of Genuine Issues of Material Fact, filed on January 23, 2004, at ¶ 1; *see also* defendants' Statement of Uncontroverted Facts, filed on January 8, 2004, at ¶ 2. Plaintiff filed the original complaint in this action on July 19, 1999, and a first amended complaint on May 8, 2000, asserting claims against defendants for patent infringement in violation of 35 U.S.C. § 271(a), and against O'Rourke and Macke for inducing patent infringement pursuant to 35 U.S.C. § 271(b).[1]

The Court granted defendants' motion for summary judgment of non-infringement of the '592 patent on February 13, 2002. The Federal Circuit reversed the Court's grant of summary judgment of non-infringement with respect to Handi–Drink 1, and affirmed the Court's grant of summary judgment of non-infringement with respect to Handi–Drink 2 on January 29, 2003. On November 25, 2003, the Court denied defendants' motion for summary judgment of invalidity of the '592 patent.

On January 8, 2004, defendants moved for summary judgment seeking the dismissal of defendant Anthony O'Rourke. On February 26, 2004, the Court granted in part and denied in part defendants' motion. The issues of Macke's willful infringement of the '592 patent, damages,

and O'Rourke's personal liability for inducing infringement of the '592 patent were tried to the jury on October 5, 6, 7, 8, 12, and 13, 2004. On October 13, 2004, the jury returned its special verdicts. On the Special Verdict Form, the jury answered the questions below as follows:

1. Do you find that Mr. Wechsler has shown by a preponderance of evidence that Mr. O'Rourke is personally liable for infringement of the Wechsler patent?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES____    NO _X_

2. Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in 1997 through the meetings between Mr. Woods and Mr. O'Rourke and his representatives, and thereafter commencing sales of the original Handi–Drink?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES____    NO _X_

3. Do you find by clear and convincing evidence that Defendants have willfully infringed based upon Defendants becoming aware of the content of the Wechsler patent in April 1999 and then continuing to sell the original Handi–Drink?

"YES" is a finding for Mr. Wechsler. "NO" is a finding for Mr. O'Rourke.

YES _X_    NO____

4. What are the total damages owed to Mr. Wechsler for the infringement of the Wechsler patent?

---

1. The amended complaint added defendant Petsmart, Inc. All claims against defendant Petsmart, Inc., and Petsmart Inc.'s counterclaim against plaintiff were dismissed with prejudice on July 7, 2003.

LOST PROFITS:          $ 630,600

REASONABLE ROYALTY:    $  25,535

TOTAL:                 $ 656,135

On October 27, 2004, the Court entered an order of final judgment.[2]  On November 12, 2004, defendants filed a renewed motion for judgment as a matter of law precluding lost profits damages.  The Court heard oral argument on December 13, 2004, and took the matter under submission.

## II.  STANDARD

■ Judgment as a matter of law is proper "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion and that conclusion is contrary to the jury's." *Vollrath Co. v. Sammi Corp.*, 9 F.3d 1455, 1460 (9th Cir.1993).  Judgment as a matter of law is improper if there is substantial evidence to support the jury's verdict.  *See Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir.1985).  " 'Substantial evidence' is admissible evidence that reasonable minds might accept as adequate to support a conclusion." *Davis v. Mason County*, 927 F.2d 1473, 1486 (9th Cir.1991).

■ In considering a motion under Rule 50, the court does not assess the credibility of witnesses, and does not

"weigh the evidence, but [instead] draws all factual inferences in favor of the non-moving party." *Landes Constr. Co. v. Royal Bank of Canada*, 833 F.2d 1365, 1371 (9th Cir.1987); *Lytle v. Household Mfg., Inc.*, 494 U.S. 545, 554, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).  Finally, the court may not substitute its judgment of the facts for the judgment of the jury. *Tennant v. Peoria & Pekin Union Ry. Co.*, 321 U.S. 29, 64 S.Ct. 409, 88 L.Ed. 520 (1944).

## III.  DISCUSSION

■ Defendants argue that the jury's award of lost profits of $630,600 is unexplained and unsupported by any of the evidence presented at trial, including the calculations offered by plaintiff's own expert.  Mot. at 7.  They assert that plaintiff failed to establish three of the four parts of the governing test, as laid out in *Panduit Corp. v. Stahlin Bros., Fibre Works, Inc.*, 575 F.2d 1152, 1156 (6th Cir.1978), for determining whether lost profits should be awarded as damages: (1) demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of profit the patentee would have made. *See id.* at 8–10.  Specifically, defendants con-

**2.** The Court's order of judgment decreed:

1.  That the manufacture, sale, offer to sell, use, and/or importation of the Handi–Drink 1 and "hinged" Handi–Drink 4 products infringe claims 1, 2, 3, 11, 12, 14, 18, 19 and 20 of the '592 Patent;

2.  That claims 1, 2, 3, 11, 12, 14, 18, 19, and 20 of the '592 Patent are not invalid;

3.  Plaintiff Lawrence I. Wechsler is owed the sum of $653,135 as compensatory damages for the infringement of the '592 patent, with interest thereon to be later determined by the Court;  and

4.  That determination of any award of enhanced damages under 35 U.S.C. § 284, attorney fees under 35 U.S.C. § 285, costs

under Fed.R.Civ.P. 54(d)(91), and the scope of an injunction against further infringement, shall be later made by the Court, upon motion.

Following an objection to the form of judgment by defendants' counsel, on November 1, 2004, the Court ordered plaintiff's counsel to lodge a proposed amended judgment, nunc pro tunc, that included the following language: "Defendant Anthony O'Rourke is not personally liable for infringement of the '592 Patent" and "Defendants have willfully infringed based upon becoming aware of the content of the Wechsler patent in April 1999 and then continuing to see the original Handi–Drink."

tend that plaintiff fails to meet parts (2), (3), and (4) of this test.

As to the second prong, defendants contend that Macke's Handi–Drink 2 was an acceptable, non-infringing substitute for plaintiff's product ("the Gulpy"), notwithstanding the fact that it was not introduced into the market until April 2000. *Id.* at 11–12. With regard to its availability, defendants assert that the design of the Handi–Drink 2 "was available to Defendants at any time that they desired to more clearly avoid infringement" of the '592 patent, and that "a non-infringing process for producing a non-infringing product" is an acceptable non-infringing substitute under *Panduit. Id.* at 12 (citing *Grain Processing Corp v. Am. Maize–Prods. Co.*, 185 F.3d 1341, 1349 (Fed.Cir. 1999)).

As to the third prong, defendants assert that the mere fact that plaintiff "conceived" of the Gulpy in early 1995 but did not introduce it on to the market until April 2001, establishes plaintiff's lack of manufacturing capability to meet product demand. *Id.* at 13. Further, they argue that inasmuch as plaintiff had no knowledge of the pet product distributors or customers Macke sold to at the time he introduced the Gulpy, he has not established his manufacturing and marketing capability to exploit the demand for pet watering devices. *Id.* at 14–15.

As to the fourth prong, defendants assert that plaintiff has not produced sufficient evidence that his company ("New Angle") would have made any of Macke's sales of the infringing Handi–Drink. *Id.* at 16. Defendants contend that plaintiff relies only on his own unsupported and conclusory statements and those of his expert, Dr. Goedde, that plaintiff would have made 90 or 100 percent of the infringing sales. *Id.* at 16. Specifically, they contend that plaintiff's sole evidence of the lost profit per unit of sales was his own

testimony regarding the price at which he anticipated selling his product, which price was "blindly adopted" by Dr. Goedde in his lost profits calculations. *Id.* Defendants further contend that the actual sales prices for the Gulpy that Dr. Goedde also used in his calculations were not from the "relevant time period" of November 1998 to April 2000—that is, the time of the infringing sales—and that since plaintiff did not have a product on the market during that period, he could not have made the infringing sales. *Id.* at 16–17.

Finally, defendants assert that plaintiff is not entitled to any of New Angle's lost profits because there is no evidence in the record that plaintiff granted the company an exclusive license, or indeed any license at all, to make the Gulpy under the '592 patent. *Id.* at 17–18 (citing *Poly–America, L.P. v. GSE Lining Technology, Inc.*, 383 F.3d 1303, 1311–12 (Fed.Cir.2004)) (holding that patentee could not recover lost profits of its non-exclusive licensee). Defendants argue that to "synthetically create lost profits" for plaintiff based on New Angle's profits would be improper, especially in light of the fact that New Angle was never a party to this litigation. *Id.* at 18 (quoting *Poly–America,* 383 F.3d at 1311–12). Defendants assert that they were never able to undertake any discovery from New Angle, and hence the record does not establish that New Angle had an exclusive license under the '592 patent. *Id.* at 18–19.

Plaintiff responds first that defendants are erroneously characterizing lost profits as a pure question of law. Opp. at 2. Plaintiff asserts that the Court's role is to determine the threshold question of whether lost profits are legally available to a patentee, while the actual calculation of lost profits is an issue of fact for the jury. *Id.* at 2–3. Plaintiff further asserts that the true test for lost profits damages is the "but for" test—that is, to recover lost prof-

its plaintiff must show that *but for* the infringement, he would have made the infringer's sales—and that *Panduit* is only one method for proving lost profits, not the exclusive test. *Id.* at 4–6. In any event, plaintiff argues, since defendants agreed to the instructions given by the Court to the jury as to awarding lost profits, they waived any subsequent *legal* challenge to that issue. *Id.* at 6–7. Accordingly, plaintiff argues that defendants can only challenge the sufficiency of the evidence under the agreed-upon jury instructions. *Id.* at 7.

Plaintiff contends that under the JMOL standard, substantial evidence supports the jury's verdict on lost profits. As an initial matter, plaintiff rebuts defendant's suggestion that the jury's award is speculative simply because it does not match any of the expert testimony, and asserts that the lost profits amount of $630,600 "is supported by several plausible calculations."[3] *Id.* at 8–9. Plaintiff further argues that there is substantial evidence that he has met the "but-for" causation test, including the expert testimony of Dr. Goedde. *Id.* at 10 (citing 10/06/04 Trial Tr. at 139–44, 167–68). Plaintiff also argues that there is substantial evidence that he has satisfied all four *Panduit* factors.

As to the second *Panduit* factor regarding acceptable, non-infringing substitutes, plaintiff points out that the jury was instructed that the existence of available acceptable alternatives "may diminish lost profits," but that it does not preclude recovery of lost profits. Plaintiff argues that

lost profits may be recovered despite the presence of non-infringing substitutes if the patentee can show that it would have made sales but for the infringement. *Id.* at 11. In this regard, plaintiff cites to trial testimony demonstrating that the hingeless Handi–Drink 2 was not an acceptable non-infringing substitute. *Id.* at 11–12.[4]

As to the third *Panduit* factor relating to plaintiff's manufacturing and marketing capacity, plaintiff contends that he was not required to have actually sold his product contemporaneously with defendants. Rather, plaintiff argues that he must only establish that but for the infringement, he *would* have made some or all of defendants' sales. *Id.* at 14. Plaintiff asserts that the evidence shows that he "did sell and currently does sell the patented product," and hence a reasonable but-for inference exists. *Id.* at 15–16.

As to the fourth factor regarding the amount of lost profits, plaintiff asserts that at trial he testified as to both the costs and the pricing of the Gulpy, and that defendants have failed to show that this testimony is any way legally insufficient. Together with the expert testimony of Dr. Goedde, plaintiff argues that it constitutes substantial evidence supporting the jury's verdict.

Regarding whether plaintiff can recover New Angle's lost profits, plaintiff asserts that defendants rely on cases in which the plaintiffs were non-exclusive licensees and that in contrast, New Angle has an exclusive license on the '592 patent, as plaintiff testified at trial. *Id.* at 18–19.[5] Plaintiff

---

3. Plaintiff posits that "the jury determined that [plaintiff] was entitled to lost profits on approximately 150,000 units of his Gulpy, price erosion, and a royalty rate on the remaining infringing sales. After weighing the testimony of the respective experts, the jury independently calculated each of the components of lost profits and arrived at a reasonable award." Opp. at 9.

4. Plaintiff also argues that the Handi–Drink 2 was not "available" at the relevant time. Opp. at 12–13.

5. In response to the question "Have you ever allowed any company to make products under the patent?" plaintiff answered, "The only company that I allow to make products is New Angle Pet Products. I do not allow any other companies to make it." 10/6/04 Trial

asserts that a patentee can recover profits of a separate corporation that is an exclusive licensee. *Id.* at 18 (citing *Carver v. Velodyne Acoustics, Inc.*, 202 F.Supp.2d 1147, 1149 (W.D.Wash.2002) (citing *Kalman v. Berlyn Corp.*, 914 F.2d 1473 (Fed. Cir.1990))). Plaintiff points out that in *Kalman* the Federal Circuit awarded 50% of the lost profits damages to the patentee, who held 50% interest in the company with the exclusive license under his patent, and argues that as the sole shareholder and 100% owner of New Angle, he is entitled to all of the lost profits. *Id.* at 18–19 (citing *Kalman*, 914 F.2d at 1477–78, 1482–83). Plaintiff also argues that defendants have waived their right to claim that there is a legal distinction between himself and New Angle, because (1) they did not timely assert a real party in interest defense, and (2) they are judicially estopped by their own assertion, in related litigation, that plaintiff and New Angle were one and the same. *Id.* at 21–22.[6]

■■ The Court finds that defendants have failed to establish that there is no substantial evidence for the jury's award of $656,135 lost profits damages to plaintiff. The governing standard for determining whether a patentee is entitled to lost prof-

its damages is the "but-for" causation test established in *Water Technologies Corp. v. Calco, Ltd.*, 850 F.2d 660, 671 (Fed.Cir. 1988): namely, whether the patentee, but for the infringement, would have made the infringer's sales. The Federal Circuit has repeatedly confirmed that the *Panduit* test is an acceptable, but not an exclusive, test for determining whether the required but-for causation existed. *See, e.g., Rite–Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1548 (Fed.Cir.1995). Plaintiff presented substantial evidence of such but-for causation in the form of evidence of his development and sales of the Gulpy and the testimony of his expert, Dr. Goedde. The strength of that evidence was determined by the jury, and may not be reconsidered by the Court.

■ With regard to the argument that plaintiff may not recover lost profits for New Angle because he has not demonstrated that New Angle had an exclusive license on the '592 patent, defendants rely on *Poly–America*, in which the patentee-licensor and the seller-licensee were two separate corporations, although they shared the same parent corporation. As such, it is distinguishable from the present

---

Tr. at 20. Defendants argue that this testimony does not establish an exclusive license, as "[i]t is essential to an exclusive license that the patentee no longer has the ability to license others." Reply at 22 (citing *Textile Productions, Inc. v. Mead Corp.*, 134 F.3d 1481, 1484 (Fed.Cir.1998)).

Plaintiff also asserts that a copy of the actual exclusive license is part of the record, having been attached to plaintiff's opposition to defendants' motion in limine to preclude evidence of lost profits, and has attached it again in connection with the present motion as Exhibit 16 to the supporting declaration of Irfan A. Lateef ("Lateef Decl."). However, the Court excluded that agreement from trial because it was not provided during discovery, and defendants object to and move to strike it on those grounds. Defendants' objection is sustained.

6. In support of its argument, plaintiff attaches as Exhibits 17 and 18 to the Lateef Declaration the Complaint for Damages, filed June 21, 2002, in *Anthony O'Rourke and Macke Int'l Trade, Inc. v. Wechsler & Wechsler and New Angle Pet Prods., Inc.*, U.S.D.C., C.D. Cal., Case No. CV 02–4963 CAS, and the Memorandum of Points and Authorities in Support of Leave to File Third Amended Complaint, filed March 15, 2001, in *Anthony O'Rourke and Macke Int'l Trade, Inc. v. Lawrence Wechsler*, U.S.D.C., C.D. Cal., Case No. CV 00–7629(CAS). Defendant objects to and moves to strike both these exhibits on the grounds that they were never introduced at trial and hence should not be considered. Defendants' objection is overruled. These cases may be judicially noticed, and the fact that these suits were filed was certainly the subject of argument at trial.

case. The Federal Circuit explained that the patent holder, Poly–America, could not recover lost profits for licensee Poly–Flex's lost sales of the patented device:

> Poly–America and Poly–Flex...are not simply divisions of a single corporation, but are separate corporate entities. Their parent has arranged their corporate identities and functions to suit its own goals and purposes, but it must take the benefits with the burdens .... Poly–America and Poly–Flex may not enjoy the advantages of their separate corporate structure and, at the same time, avoid the consequential limitations of that structure—in this case, the inability of the patent holder to claim the lost profits of its non-exclusive licensee.

*Poly–America*, 383 F.3d at 1311. The rationale for the decision in *Poly–America* plainly does not exist here. As plaintiff testified at trial, he is the sole owner and president of New Angle, not a separate corporate entity. Moreover, in *Poly–America*, the selling corporation was "clearly identified in the license agreement as a non-exclusive licensee." *Id.* What evidence there is in this case strongly supports the opposite inference—that New Angle had an exclusive license on the '592 patent. Defendants have produced no evidence to the contrary. Accordingly, the Court is unpersuaded that plaintiff cannot recover lost profits for his company on the grounds that it was a non-exclusive licensee.

## IV. CONCLUSION

For the reasons discussed above, defendants' motion for judgment as a matter of law precluding lost profits damages is DENIED.

IT IS SO ORDERED.