NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**PIGGY PUSHERS, LLC,**
*Plaintiff-Appellant,*

**v.**

**SKIDDERS FOOTWEAR, INC.,**
*Defendant-Appellee.*

---

2013-1107

---

Appeal from the United States District Court for the Western District of Michigan in No. 10-CV-0644, Judge Robert Holmes Bell.

---

Decided: November 8, 2013

---

CASEY L. GRIFFITH, Klemchuk Kubasta, LLP, of Dallas, Texas, for plaintiff-appellant. With her on the brief was KELSEY W. JOHNSON.

MORRIS E. COHEN, Goldberg Cohen, LLP, of New York, New York, for defendant-appellee. With him on the brief was LEE A. GOLDBERG. Of counsel was DAVID B. SUNSHINE, Cozen O'Connor, of New York, New York.

---

Before WALLACH, LINN, and TARANTO, *Circuit Judges.*

PER CURIAM.

Piggy Pushers, LLC, sued Skidders Footwear, Inc., in the Western District of Michigan for patent infringement. After construing the asserted claims and granting summary judgment of noninfringement, the district court entered final judgment in favor of Skidders. Piggy Pushers appeals. For the reasons set forth below, we affirm.

## BACKGROUND

Piggy Pushers owns U.S. Patent No. 6,385,779, which is directed to infant socks with "gripper" surfaces that provide traction for crawling and walking. Each claimed sock is infant-sized and includes a gripper—a friction-enhancing material, such as rubber—covering at least a portion of the upper, lower, and toe surfaces of the sock. '779 patent, col. 1, lines 52-67; *id.*, col. 4, lines 13-28. The placement of the gripper surface allows it to touch the floor whether the infant is crawling (when part of the top of the foot, or the toes, touch the floor) or walking (when the bottom of the foot touches the floor), thus distinguishing prior-art socks that allegedly provided traction only on the bottom of the sock. *Id.*, col. 1, lines 26-48. Claim 1 is representative:

1. An infant sock for crawling infants comprising:

a sock member sized to fit a foot of an infant learning to crawl, said sock member having an exterior upper surface and an exterior lower surface extending between an open end and a closed end, said closed end having an exterior toe surface; and

a gripper member connected to said sock member, said gripper member covering at least a portion of each of said exterior upper surface, said exterior lower surface and said exterior toe surface,

said gripper member having a coefficient of friction greater than a coefficient of friction of any of said exterior surfaces of said sock member whereby said gripper member covering at least one of said at least a portion of said exterior upper surface and said exterior toe surface provides increased traction to an infant crawling on a smooth surface.

*Id.*, col. 4, lines 13-28. Figures 2 and 3 of the '779 patent depict alternative embodiments of the claimed inventions, showing both tube- and foot-shaped socks, as well as gripper surfaces composed of a single piece of frictional material, *e.g.*, **12**, or a series of ribs, *e.g.*, **113**:



FIG. 2          FIG. 3

*Id.*, col. 2, line 55, through col. 3, line 8; *id.*, col. 3, lines 39-64.

On July 6, 2010, Piggy Pushers brought suit against Skidders for allegedly infringing the '779 patent. Skidders

makes footwear, including the accused product for twelve-month-old children, pictured below:



J.A. 352. The product consists of a foot-surrounding sock bonded to a rubber outsole. *Piggy Pushers, LLC v. Skidders Footwear, Inc.*, No. 1:10-CV-644, 2012 WL 5398801, at *4 (W.D. Mich. Nov. 2, 2012).

On March 5, 2012, the district court issued its opinion construing various terms of the '779 patent. *Piggy Pushers, LLC v. Skidders Footwear, Inc.*, No. 1:10-CV-644, 2012 WL 718907 (W.D. Mich. Mar. 5, 2012). First, the court construed the preamble of each claim at issue as limiting the claimed invention as a whole to a "sock." *Id.* at *2-3. As to the meaning of the term "sock," the court said that "[n]othing in the claim language or the specifica-

tions suggests that the inventor intended 'sock' to mean anything other than what a person of ordinary skill in the art of footwear would understand it to mean." *Id.* at *3. The court then said that it was construing "sock" to mean "a knitted or woven covering for the foot"—even while indicating that the ordinary meaning governed to distinguish a shoe. *Id.* The court construed "sock member" to mean "a part of the sock" and construed "a sock member sized to fit a foot of an infant learning to crawl" to mean "a sock member of a size such that it conforms to the foot of an infant learning to crawl." *Id.* at *4-5. Neither party argued that "gripper member" required construction; accordingly, the court did not construe that phrase. *Id.* at *2.

On August 6, 2012, Skidders moved for summary judgment of noninfringement, which the district court granted on November 2, 2012. *Piggy Pushers,* 2012 WL 5398801, at *1. The district court recited evidence that the accused product has various qualities consistent with shoes—such as a thick, durable outsole, a separate insole, a fixed size and shape, a design not intended to be worn inside a shoe, and left-foot and right-foot designations—evidence to which Piggy Pushers "raised few challenges." *Id.* at *2-3. At the same time, the district court noted that there was "no dispute that the Accused Product consists of a sock that has been bonded to a rubber outsole"; that Skidders had described the accused product as "sock-like," as a "sock with rubber outsole," and as a "hybrid sock-shoe design"; and that "retailers could not decide whether to put [the accused product] in the hosiery department or the shoe department." *Id.* at *4 (internal quotation marks omitted).

Considering the evidence presented, the district court concluded that Piggy Pushers was entitled to summary judgment of noninfringement. Although Piggy Pushers had shown "a question of fact as to whether the Accused Product is a hybrid shoe and sock," the court reasoned,

the '779 patent "addresses a sock," not "a hybrid sock-shoe," and there was "simply no evidence from which a reasonable jury could conclude that [Skidders's] product is a sock." *Id.* That conclusion—which appears to have relied on the ordinary meaning of "sock" in addition to the "knitted or woven covering for the foot" language of the claim-construction opinion—sufficed for summary judgment of noninfringement. *Id.* at *5. As an alternative basis for granting summary judgment, the district court agreed with Skidders that "any reasonable jury would find that because the sock member of the Accused Product is bonded to a rigid rubber sole, the sock portion of the Accused Product does not *conform to* the foot," as required by the district court's construction. *Id.* at *6 (emphasis added). For those reasons, the district court entered judgment in favor of Skidders, a judgment that became final upon the stipulated dismissal of counterclaims without prejudice. *See Doe v. United States*, 513 F.3d 1348, 1353-55 (Fed. Cir. 2008); *Hicks v. NLO, Inc.*, 825 F.2d 118, 120 (6th Cir. 1987).

Piggy Pushers appeals. We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(1).

## DISCUSSION

Piggy Pushers challenges the district court's construction of the preambles as limiting the claims, its conclusion that no reasonable jury could find that the accused product is a "sock," and its conclusion that no reasonable jury could find that the sock portion of the accused product conforms to the foot. We review the district court's claim construction and its grant of summary judgment de novo. *Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1451 (Fed. Cir. 1998); *Honeywell Int'l, Inc. v. ITT Indus., Inc.*, 452 F.3d 1312, 1317 (Fed. Cir. 2006).

A

Because some preambles are limiting and others not, we focus on the sole concrete issue at stake in deciding whether the particular preambles here are limiting—namely, whether, when the elements recited in the body of the claims are combined as claimed, the result must itself be a sock. We think the answer plain from the specification, which uniformly describes what results from combining the sock member with the gripper member as itself remaining a "sock." '779 patent, cols. 1 and 2 (background of the invention; summary of the invention). In particular, the specification distinguishes a sock from a "shoe," which can be undesirable or difficult to put on an infant; so the addition of the gripper cannot transform the sock into a shoe. '779 patent, col. 1, lines 22-25. More generally, introducing the invention, the specification explains that "socks *can be* disadvantageous on smooth floor surfaces . . . because there is a very low coefficient of friction between fabric material of the socks and the floor surface," *id.*, col. 1, lines 17-20 (emphasis added), and that the inventors have conceived and described a particular kind of "sock" that overcomes that problem, without the use of a "shoe," and does so for crawling infants, not just those who can walk, *id.*, col. 1, lines 10-11, 42-49, 52-53, 66; *id.*, col. 2, line 19.

The requirement that the combined elements form a "sock" is a "fundamental characteristic of the claimed invention." *Poly-Am., L.P. v. GSE Lining Tech., Inc.*, 383 F.3d 1303, 1310 (Fed. Cir. 2004) (internal quotation marks omitted). We therefore affirm the construction of the preambles as limiting to the extent necessary to express the idea that the claims each cover a sock, not a shoe or another article that may be derivative or partly made up of a sock but is not itself a sock. *See Am. Med. Sys., Inc. v. Biolitec, Inc.*, 618 F.3d 1354, 1358 (Fed. Cir. 2010) ("Whether to treat a preamble term as a claim limitation is determined on the facts of each case in light

of the claim as a whole and the invention described in the patent.") (internal quotation marks omitted).

## B

That conclusion decides this case, because "[n]o reasonable juror could conclude that the Accused Product *is* a sock as defined in the patent." *Piggy Pushers*, 2012 WL 5398801, at *5 (emphasis added). Once the preamble language is accepted as a limitation of the whole product to a "sock," Piggy Pushers's only meaningful argument about whether the accused product is a "sock" relies on "sock" having only the meaning of "a knitted or woven covering for the foot." But that approach, while understandable given some aspects of the district court's claim-construction opinion, is not ultimately sensible considering the full context of the patent and the litigation.

The "knitted or woven covering" formulation is necessarily incomplete. If it meant to exclude all non-knitted and non-woven components, it could not fit this patent, which is all about adding such components. Once it is acknowledged that additions to the knitted or woven material are allowed, nothing in the "knitted or woven covering" formulation itself supplies a principle to identify what additions are allowed. Yet there must be such a limit, given the undisputed exclusion of shoes—which can readily include foot coverings made of woven material such as canvas.

For such reasons, the governing construction of "sock" must, instead, include its ordinary meaning, captured centrally but not exclusively by the knitted-or-woven-covering language. That is evidently how the district court understood the construction it was applying on summary judgment: the ultimate product must remain a "sock" in its ordinary meaning, even with the addition of friction-enhancing components. Importantly, Piggy Pushers does not argue here that there was a change of construction that unfairly denied it the opportunity to

present evidence—which it plainly did present—on whether the accused product was covered by the fuller understanding of "sock" that incorporated the word's ordinary meaning.

Under that construction, Piggy Pushers has no challenge to the summary-judgment ruling. It argues that the accused product *includes* a sock, but that is not enough. It had evidence that Skidders sometimes described the product as a "sock *with rubber outsole,"* or in similar terms, but never simply as a sock. *Piggy Pushers*, 2012 WL 5398801, at \*4 (emphasis added). It had evidence, too, that "retailers could not decide whether to put [it] in the hosiery department or the shoe department." *Id.* But such evidence showed at most a hybrid character of the product. Piggy Pushers had no evidence to respond to Skidders's evidence that the product, with its rigid rubber sole severely constraining flexibility in shape and size, was not a "sock" under that term's ordinary meaning, applied within the context of this patent. *Id.* at \*3-4. In these circumstances, there is no evidence from which a jury could reasonably find that the product actually is a sock.

In light of that conclusion, we need not reach the district court's alternative ground of decision, concerning a requirement that a covered product conform to the foot.

CONCLUSION

For the reasons stated above, we affirm the district court's construction of the asserted claims as limited to "socks" and the grant of summary judgment based on that construction.

No costs.

**AFFIRMED**