NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**NASSAU PRECISION CASTING CO., INC.,**
*Plaintiff-Appellant,*

**v.**

**ACUSHNET COMPANY, INC., COBRA GOLF COMPANY, AND PUMA NORTH AMERICA, INC.,**
*Defendants-Appellees.*

---

2013-1410

---

Appeal from the United States District Court for the Eastern District of New York in No. 10-CV-4226, Judge William F. Kuntz, II.

---

Decided: June 6, 2014

---

DARIUSH KEYHANI, Meredith & Keyhani, PLLC, of New York, New York, argued for plaintiff-appellant. With him on the brief was SIDNEY R. BRESNICK.

JOSHUA C. KRUMHOLZ, Holland & Knight LLP, of Boston, Massachusetts, argued for defendants-appellees. With him on the brief was BENJAMIN M. STERN.

---

Before WALLACH, TARANTO, and CHEN, *Circuit Judges*.

TARANTO, *Circuit Judge*.

Nassau Precision Casting Co., Inc., owns United States Patent No. 5,486,000, entitled "Weighted Golf Iron Club Head." In September 2010, Nassau sued Acushnet Company, Inc., Cobra Golf Company, and Puma North America, Inc. (collectively, "Acushnet") for infringement of the '000 patent. Nassau appeals from a decision of the United States District Court for the Eastern District of New York that granted Acushnet's motion for summary judgment of non-infringement. For the reasons set out below, we affirm in part, vacate in part, and remand.

## BACKGROUND

The '000 patent describes what it says is an improvement in the distribution of weight within the head of a golf club. The purpose of the invention is to achieve "sweet spot-enhancement, i.e. significant improvement in the ball-striking efficacy of the club head, while maintaining the same starting overall weight of the club head." '000 patent, col. 1, lines 58-61. The '000 patent states that "in the typical use of a golf club iron the ball is never intentionally struck near or at the top edge of the club face, but always at the 'sweet spot' or below," and therefore calls for removing material (generally metal or graphite) from the "top edge central portion" of the golf club head and relocating it to a lower position, preferably near the bottom edge of the golf club head. '000 patent, col. 2, lines 7-9; *id.*, col. 3, lines 10-20. Figures 5 and 10 of the '000 patent depict a prior art golf club head and a golf club head contemplated by the '000 patent, respectively:



FIG.5          FIG.10

Area 38 of figure 10 shows where material has been removed. *Id.*, col. 3, lines 12-15, 26. The '000 patent calls for relocating the removed material (for instance, to areas 40), rather than eliminating it entirely, so as not to alter "the overall swing weight of the club head, which typically is selected according to the size and handicap of the golfer and should remain unchanged." *Id.* at Abstract.

The two asserted claims recite "methods" of improving weight distribution in a club head by removing construction material from the central portion of the top surface of the club head and relocating it to the bottom areas of the toe and heel of the club head. Claims 1 and 2 read:

> 1. In a golf iron club head of a type having a ball-striking body of weight-imparting construction material inclined at a selected angle for driving a struck golf ball a corresponding selected height during its trajectory, said body having spaced-apart top and bottom surfaces bounding a ball-striking surface therebetween, the method of improving weight distribution comprising removing construction material from said top surface, relocating said removed construction material from said top surface to clearance positions below said top surface located adjacent opposite ends of said bottom, surface whereby said removed construction material from a location not used during ball-striking service of said golf iron, is of no adverse consequence thereto and said removed construction material in said relocated positions

contributes to increasing said height attained by a struck golf ball.

2. A method of improving the weight-distribution of a selected construction material constituting a golf iron club head with a ball-striking surface bounded in a vertical perspective by top and bottom surfaces and in a horizontal perspective by toe and heel portions said method comprising the steps of removing construction material from a central portion of said top surface, determining the weight of said removed construction material, and embodying as part of selected bottom areas of said toe and heel of said club head said removed construction material having said determined weight, whereby the weight is distributed to said selected bottom area without any increase in the overall weight of the club head.

'000 patent, col. 4, lines 16-44.

On September 16, 2010, Nassau brought this action, accusing Acushnet of infringing claims 1 and 2 of the '000 patent by making, offering to sell, and selling its Cobra S9, Cobra S9 Second Generation, King Cobra UFi, and Cobra S2 clubs. *Nassau Precision Casting Co., Inc. v. Acushnet Co., Inc.*, 940 F. Supp. 2d 76, 78 (E.D.N.Y. 2013); Compl.¶¶ 14, 18, *Nassau Precision Casting Co., Inc. v. Acushnet Co., Inc.*, No. 10-CIV-4226 (E.D.N.Y. Sep. 16, 2010) (ECF No. 1). The following characteristics of the named clubs—not of the processes by which they were designed or manufactured—are not in dispute. None of the accused clubs has a concave-from-above topline like the one depicted in figure 10 of the '000 patent; the face of each club, in the upper portion, has a profile like that of the prior-art club head shown in figure 5. But the top surface (not face) of each club contains a channel in the metal/graphite construction material, and a lightweight polymer insert fills that channel. To ensure that the total

weight of the club head is the same as if the metal/graphite construction material filled the channel, the bottom heel and toe of the club head contain more metal/graphite construction material than if no channel existed at the top—the extra amount equal in weight to the construction material "missing" from the top *minus* the weight of the polymer insert. *Id.* at 83.

On April 17, 2013, the district court granted summary judgment of non-infringement in favor of Acushnet. *Id.* at 78. The district court concluded that "the ordinary meaning of terms in Claims 1 and 2 such as 'remove,' 'relocate,' and 'construction material' is the shifting or redistributing of mass or weight in a golf club head design in order to achieve an optimal weight distribution." *Id.* at 90. Treating that language as not referring to any actual process of manufacture or design, but to where weight is in a club compared to where it would be in some other model club, the court nevertheless held both claims not to be infringed as a matter of law.

As to claim 2, the district court reasoned that the claim requires that "*all* of the construction material or weight removed from the top of the club be embodied in the selected bottom areas," while not changing the net weight of the club. *Id.* at 92. In the accused clubs, however, an amount of construction material equal to only the difference in weight between the polymer insert and the removed construction material is embodied in the bottom areas of the accused clubs—not the entire "determined weight" of the removed material. *Id.* For that reason, the district court found that the accused clubs could not infringe claim 2. *Id.* at 92-93.

As to claim 1, the district court construed the phrase "removed construction material from a location not used during ball-striking service" as "prohibit[ing] removal of construction material from the club head *face*," because "any area of the club head face may be used to strike a

golf ball." *Id.* at 90 (emphasis added). The district court based its conclusion on testimony stating that the upper portion of the *face* near the "topline"—the line where the face meets the top surface of the club—is sometimes, though rarely, used to strike a ball. *Id.* at 91. Having so construed the claim element, the district court then concluded that the accused clubs did not meet this element, even though it is undisputed that in the accused clubs material is "removed" only from the top surface of the club head, not the face. *Id.* at 92. In moving from claim construction to application, the court thus seems to have broadened its view to extend beyond the face of the club head to encompass the top surface, although none of the material cited from the patent or the evidence says that the top surface is ever used for striking the ball.

On May 28, 2013, the district court entered an amended final judgment in favor of Achushnet on Nassau's infringement claims, dismissing as moot Acushnet's counterclaim for invalidity of the '000 patent. We have jurisdiction under 28 U.S.C. § 1295(a)(1).

### DISCUSSION

We review the district court's claim constructions and its grant of summary judgment of non-infringement de novo. *Lighting Ballast Control LLC v. Philips Elecs. N. Am. Corp.*, 744 F.3d 1272, 1276-77 (Fed. Cir. 2014) (en banc); *Omega Eng'g, Inc, v. Raytek Corp.*, 334 F.3d 1314, 1320 (Fed. Cir. 2003). Summary judgment is appropriate if, drawing all factual inferences in favor of the nonmoving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; *Omega*, 334 F.3d at 1320.

### A

We begin with claim 2. We hold that the district court correctly ruled that claim 2 is not infringed. For this

purpose, it suffices to focus, as Nassau does and the district court did regarding claim 2, on a comparison of two clubs—one before and one after the claimed process of "removing" material from the top surface and "embodying . . . said removed construction material" on bottom areas, whether in making any of the clubs or in designing them. '000 patent, col. 4, lines 37-41.

Claim 2 requires that the weight of the club remain unchanged after relocating to the bottom of the club the construction material removed from the top, so all the removed material (in weight) must be relocated to the bottom. It is undisputed that, in the accused clubs, the "before" and "after" clubs have exactly the same weight after the combined steps of relocating construction material from the top to the bottom *and* inserting the polymer material at the top. *Nassau*, 940 F. Supp. 2d at 83; Oral Arg. at 26:41-27:19. As a result, as the district court correctly concluded, not *all* the construction material allegedly removed from the top (or its equivalent in weight) could be placed on the bottom of the accused clubs. The polymer insert weighs something. For the weight to remain the same in the resulting club, as is undisputedly true of the accused clubs, only an amount of the removed construction material with the polymer-insert weight subtracted could have been relocated to the bottom areas of the accused clubs. Claim 2 is not satisfied.

Nassau has not preserved an argument about claim construction that would overcome this simple reason the accused clubs cannot infringe. Although Nassau now makes an argument about "determined weight," Nassau waived this argument below by failing to offer any response to Acushnet's assertion of non-infringement based on the fact that, in the accused clubs, some of the weight of the allegedly removed construction material remains in the topline of the club head in the form of the polymer insert. In any event, the claim meaning is clear in requir-

ing that the "determined weight" of the "removed construction material" be "distributed to said selected bottom area without any increase in the overall weight of the club head." '000 patent, col. 4, lines 32-44. The ordinary meaning of this language is that all of the construction material removed from the club head must be embodied in the selected bottom areas. Because it is conceded that some of the weight of the allegedly removed construction material remains in the topline of the accused club heads in the form of the polymer insert, we affirm summary judgment that Acushnet does not infringe claim 2.

B

With respect to claim 1, we vacate the district court's summary judgment of non-infringement. For this purpose, it is again sufficient to focus, as Nassau does and the district court did, on a comparison of two clubs—one before and one after the process of "removing" material from the top surface and "relocating said removed construction material" to certain bottom-area positions, either in making any of the clubs or in designing them. '000 patent, col. 4, lines 37-41. The sole claim element that the district court found missing in the accused clubs is, on the record before us, undisputedly present. We remand for further proceedings on claim 1, which presents further claim-construction and invalidity issues that we flag but do not definitively resolve.

1

The district court granted summary judgment of non-infringement of claim 1 based on the claim language requiring that the "removed construction material" be "from a location not used during ball-striking service," and Nassau's apparent concession that the entire club head face may be used (if unintentionally) during ball-striking service. *Nassau*, 940 F. Supp. 2d at 91-92. Focusing just on that element alone, we conclude that the district court's holding that the limitation was not met is

incorrect.  Indeed, on the current record, the undisputed facts show that the limitation is met.

Nassau accused Acushnet of "remov[ing] material from *behind* the top face of the club head," and Acushnet asserts that the "channel in the center topline area of the club" containing the polymer insert (which displaced the allegedly removed construction material) "undisputedly sits *behind* a face at the center topline."  Appellee Br. at 12, 37 (emphases added); Oral Arg. at 25:00-25:30.  Thus, it is apparently undisputed that in none of the accused clubs was material removed from the *face* of the club head.  Under the district court's construction of the pertinent claim element, the removed construction material must be from an area other than the club head face. *Nassau*, 940 F. Supp. 2d at 91.  Under Nassau's still broader construction of the claim element, the removed construction material must be *either* from club head areas other than the club head face *or* from the upper portion of the club head face (which is not normally and intentionally used by golfers for striking the ball).  Under either construction, the accused clubs meet the requirement: it is undisputed that all of the removed material is from areas other than the club head face.

We need not choose between the district court's construction and Nassau's construction in order to vacate summary judgment of non-infringement.  Both constructions readily encompass the accused clubs on the record before us.  Resolving this aspect of the infringement inquiry therefore does not require us to decide which of the competing constructions is correct. *See, e.g.*, *Bayer CropScience AG v. Dow AgroSciences LLC*, 728 F.3d 1324, 1331-32 (Fed. Cir. 2013); *EMI Grp. N. Am., Inc. v. Intel Corp.*, 157 F.3d 887, 895 (Fed. Cir. 1998) (finding it "irrelevant whether the district court achieved a technologically perfect definition, because there [was] no dispute that the corresponding step of the [accused] process [was]

within the literal scope of [the term], however . . . defined").

Acushnet's validity defenses to be litigated on remand could, of course, be affected by which construction is chosen.  Keeping in mind that "'[a] patent may not, like a "nose of wax," be twisted one way to avoid anticipation and another to find infringement,'" *Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1351 (Fed. Cir. 2001) (quoting *Sterner Lighting, Inc. v. Allied Elec. Supply, Inc.,* 431 F.2d 539, 544 (5th Cir. 1970)), Nassau may be held to its insistence on its broader construction when it comes to assessing invalidity.  We do not so decide, but leave the matter for remand if further construction of this claim element is needed.

2

Before entering summary judgment of non-infringement based on the "location not used" claim element, the district court rejected Acushnet's claim-construction argument that the "method" language of claim 1 (and of claim 2, for that matter) refers to a physical manufacturing process, in which a club head is initially formed one way, material is then physically removed from certain (top) areas, and that material is then moved to certain (bottom) areas. *Nassau*, 940 F. Supp. 2d at 86-90.  Acushnet renews its argument here as an alternative ground to affirm the summary judgment of non-infringement.  Like the district court, we reject Acushnet's manufacturing-process construction.

Acushnet's argument starts with the important fact that the claim language uses the fundamental patent-law language of "method," which refers to a process of taking specified actions over time.  What the language does not plainly require, however, is that the actions are steps in a manufacturing process.  And as the district court explained, such a construction is unreasonable here.  Nothing in the patent's specification refers to the steps of

physically constructing a golf club; and in the absence of a description of the physical construct-remove-relocate club-head-making process that Acushnet's interpretation would require, it is evidently undisputed that a skilled artisan would not think of making a golf club that way (instead of making and using a mold in the ultimately desired shape). *Id.* at 87. Acushnet's manufacturing-process construction is so surprising in context that it must be rejected where the language does not make it unavoidable.

Importantly, an alternative construction is readily available that gives the unmistakable language of "method" its due. "[T]he Court construes Claims 1 and 2 as describing *steps taken in designing* a golf club head with the physical characteristics described in the '000 Patent. In other words, Claims 1 and 2 encompass a design process, not a manufacturing process . . . ." *Id.* (emphasis added); *see id.* at 88 ("those terms refer to a design method, not a manufacturing process"); *id.* at 88 n.3 ("the Court reads the '000 Patent as addressing changes made to a pre-existing golf club head design—*i.e.*, the steps described by Claims 1 and 2 alter the overall design, resulting in the design of a club head with a lower [center of gravity]"). The claims thus refer to a process of designing a golf club, not only a golf club having certain structural features that might be called its "design."

A "method" in a claim, one of the most common and basic terms of patent drafting, is a "process," and "method" and "process" have a clear, settled meaning: a set of actions, necessarily taken over time. *Limelight Networks, Inc. v. Akamai Networks, Inc.*, No. 12-786 (U.S. Sup. Ct. June 2, 2014), slip op. at 5 ("[a] method patent claims a number of steps" to be "carried out"); *Bilski v. Kappos*, 561 U.S. 593, 130 S. Ct. 3218, 3228 (2010) (relying on definition of "method" as "way or manner of doing anything"); *Gottschalk v. Benson*, 409 U.S. 63, 70 (1972) ("A process . . . . is an act, or a series of acts . . . ."); *NTP, Inc. v. Re-*

*search in Motion, Ltd.,* 418 F.3d 1282, 1316 (Fed. Cir. 2005) ("'[A] process is a series of acts . . . .'") (quoting *Minton v. Nat'l Ass'n of Sec. Dealers, Inc.,* 336 F.3d 1373, 1378 (Fed. Cir. 2003)); *In re Kollar,* 286 F.3d 1326, 1332 (Fed. Cir. 2002) ("[A] process . . . consists of a series of acts or steps. . . . It consists of doing something, and therefore has to be carried out or performed."); Dept. of Commerce, Patent and Trademark Office, Manual of Patent Examining Procedure § 2106 (9th ed. 2014) (MPEP) ("Process – an act, or a series of acts or steps."). "Method" is not a technical term; its meaning is therefore not a matter of skilled artisans' understandings. It is a patent-law term with a stable, unambiguous meaning that distinguishes the subject matter from "product" subject matter. It would do unacceptable violence to that meaning to treat the claim here, reciting a "method," as one to a product defined simply by structural features.[1]

This conclusion is reinforced by the fact that claim 1, in stating the steps of the "method," uses action words: "removing," "relocating." Moreover, while it calls for a

---

[1]    The court has long warned that apparatus and method claims "are directed toward different classes of patentable subject material under 35 U.S.C. § 101" and that the distinction should not be "blurred." *Baldwin Graphic Sys., Inc. v. Siebert, Inc.*, 512 F.3d 1338, 1344 (Fed. Cir. 2008); *see Kollar*, 286 F.3d at 1332 (recognizing "the distinction between a claim to a product, device, or apparatus, all of which are tangible items, and a claim to a process, which consists of a series of acts or steps"); *NTP*, 418 F.3d at 1317 (quoting *Kollar*). The court has accordingly invalidated as indefinite claims that simultaneously claimed a product and a method of using it. *See In re Katz*, 639 F.3d 1303, 1314 (Fed. Cir. 2008); *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005); MPEP § 2173.05(p).

comparison of a resulting club to some template, *i.e.*, some "pre-existing golf club," *Nassau*, 940 F. Supp. 2d at 88 n.3, it provides no identification of the template in terms of structural properties. The only template indicated by the language is a temporal one: the club with which a designing process began. That temporal comparison, built into the claim language, reinforces the steps-over-time meaning of "method" and the action words of the claim.

Finally, the "method" language of claim 1 contrasts with the unmistakable structural product language that Acushnet used when, in some of its own patents, it claimed golf club heads that embodied designs with weight distributions different from prior-art clubs. *See* U.S. Patent No. 7,481,718, cols. 5-6; U.S. Patent No. 7,524,250, cols. 9-10; U.S. Patent No. 7,819,757, cols. 17-20. The specifications of those patents contain language loosely describing the design with language akin to the removal/relocation language Nassau placed in its claim. *See Nassau*, 940 F. Supp. 2d at 88-89. But Acushnet knew that, when it came to the claims, precision was needed in using the standard language of patent claiming for the fundamental choice about what category of subject matter it was claiming. Nassau could have claimed a product in structural terms, but it did not.

Performance of the claimed steps by a designer of the accused clubs is therefore required by claim 1. That is so if the claim is read as claiming a method itself, as its language expressly states. It also is so if the claim is treated as a product-by-process claim, covering the product resulting from the designing process and requiring proof of performance of the process in order to prove infringement. *Abbott Labs. v. Sandoz, Inc.*, 566 F.3d 1282, 1293 (Fed. Cir. 2009) (en banc). The product-by-process construction might find support in the introductory "in a club" language. But we need not resolve that question. In either event, the claimed process must be

performed by the accused infringer to establish infringement.[2]

Acushnet argues on appeal that there is no evidence from which a reasonable jury could find that Acushnet performed the designing process required by claim 1. But the district court did not examine the evidence on whether Acushnet performed that process. We think it premature to rule on Acushnet's contention. Rather, we leave initial examination of the evidence on this question—whether direct or indirect evidence—to the district court.

3

Acushnet also argues for affirmance of summary judgment that it did not infringe claim 1 on the grounds that the "no adverse consequence" limitation of claim 1 is indefinite and not met by the accused products. We decline to address Acushnet's "no adverse consequence" contentions. Acushnet argues, in particular, that whether the consequence of the club alteration is "adverse" depends on the subjective preferences of particular golfers, some of whom will prefer the effect on ball movement (greater loft, shorter distance), some of whom will not. The district court has not addressed this or Acushnet's other contentions about this claim element. *Nassau*, 940 F. Supp. 2d at 83. We think that it is preferable for the district court to do so in the first instance, if necessary.

---

[2]    If claim 1 is a method claim, Nassau may have to amend its complaint, which currently alleges that the "activities of defendants . . . in manufacturing, offering for sale, and selling golf irons . . . constitute infringement," Compl. ¶ 14, rather than accusing activities performed in the design of the accused clubs.

CONCLUSION

For the foregoing reasons, we affirm the summary judgment that Acushnet does not infringe claim 2, vacate the summary judgment that Acushnet does not infringe claim 1, and remand.

Each party shall bear its own costs.

**AFFIRMED IN PART, VACATED IN PART, AND REMANDED**